In the

# United States Court of Appeals

## For the Seventh Circuit

No. 24-2188

MICHELLE CORTEZ GOMEZ,

*Plaintiff-Appellant*,

*v.*

KOHL'S CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the Western District of Wisconsin.
No. 3:23-cv-00678 — **James D. Peterson**, *Chief Judge*.

ARGUED SEPTEMBER 16, 2025 — DECIDED AUGUST 3, 2026

Before KIRSCH, JACKSON-AKIWUMI, and MALDONADO, *Circuit Judges*.

PER CURIAM. Michelle Cortez Gomez bought a portable speaker on sale for $30 off at Kohl's, a Wisconsin-based retail chain. Cortez (we refer to the plaintiff-appellant as "Cortez," in accordance with her counsel's practice) later learned that Kohl's almost always sold the speaker at the $99.99 sale price, and almost never at the $129.99 regular price. Claiming she would not have bought the speaker if she had known it wasn't

actually on sale, a dissatisfied Cortez turned to federal court. She and other named plaintiffs sued Kohl's on behalf of a putative nationwide class of purchasers of online sale items for violating Wisconsin's Unfair Trade Practices Act (WUTPA), Wis. Stat. Ann. § 100.20.

In doing so, Cortez invoked the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), as the basis for subject matter jurisdiction. But the district court dismissed Cortez's complaint on the ground that she could not meet the amount-in-controversy for CAFA jurisdiction, which requires her to allege classwide damages in excess of $5 million. *Id.* The district court reasoned that Cortez's allegations that she bought the speaker because Kohl's misled her into believing it was on sale did not entitle her to recover damages at all under Wisconsin law. The district court held that Cortez's allegations fell short because Wisconsin law required, in order for Cortez to recover damages, that she plead that the products she bought were defective or worth less than what she paid.

No Wisconsin decision squarely addresses whether a plaintiff, lured by false price comparison advertising into purchasing a product that is worth the purchase price, suffers a pecuniary loss. Rather than decide this important and genuinely uncertain question of Wisconsin law, we certify it to the Wisconsin Supreme Court.

# I

## A

Retailers use many creative advertising techniques to make sales. Most are unproblematic. But the line between legitimate enticement and improper deception can be fuzzy,

and sometimes retailers cross it in their eagerness to make a sale.

One of these potentially problematic advertising tactics is price comparison advertising. Put simply, this strategy aims to convince the consumer that they are getting a deal by advertising the product as on sale from a fictitious, higher retail or suggested price at which the product is never (or rarely) sold. Seeking to protect consumers, the Federal Trade Commission (FTC) began regulating price comparison advertising in the 1960s. See 16 C.F.R. § 233.1(a). According to FTC regulations promulgated nearly 60 years ago:

> Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.

32 Fed. Reg. 15,534 (Nov. 8, 1967), codified at 16 C.F.R. § 233.1(a). Several states soon followed the FTC's lead by promulgating their own price comparison regulations. See David Adam Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921, 942 (2016). Wisconsin was one of them. It issued administrative regulations that tracked the FTC's guidance. These regulations recognized the legitimacy of accurate price comparison advertising (that is, advertising where the original price is real) but declared price comparison advertising harmful to the public if based on fictitious or inflated prices:

> While price comparisons accurately reflecting market values in the trade area provide consumers with useful information in making value comparisons and market buying decisions, price comparisons based on arbitrary or inflated prices or values can only serve to deceive or mislead. Further abuse occurs when sellers fail to disclose material information essential to consumer understanding of the comparisons made. The use of arbitrary or inflated price comparisons in violation of this rule as an inducement to the sale of consumer property or services is injurious to both the consuming public and competitors, and is an unfair trade practice and unfair method of competition under s. 100.20, Stats.

Wis. Admin. Code, Department of Agriculture, Trade and Consumer Protection § 124.01. As relevant here, § 124 permits price comparison advertising only if the claimed regular price is either: (a) "a price at which such property or services were actually sold by the seller in the last 90 days immediately preceding the date [of the advertisement]" or (b) "a price at which such property or services were actually sold by the seller … and the advertisement discloses with the price comparison the date, time or seasonal period when such sales were made."

A consumer aggrieved by a violation of § 124 can bring a claim under § 100.20 of the WUTPA, which provides double damages, costs, and attorneys' fees to "[a]ny person suffering pecuniary loss because of" a violation of Wisconsin's consumer protection regulations. Wis. Stat. Ann. § 100.20(5); see

also Wis. Admin Code § 124 editor's note ("A person who suffers a monetary loss because of a violation of this chapter may sue the violator directly under s. 100.20(5), Stats.").

B

Cortez alleges that, while browsing the Kohl's website in May 2023, she bought a portable speaker, among other items. The speaker was advertised as on sale for $99.99, $30 off its regular price of $129.99. But Kohl's had never sold that speaker for its regular price before Cortez bought it. And during the three months after her purchase, Kohl's had offered the sale price nearly 75% of the time. So, although Cortez thought she was paying $99.99 for a speaker regularly priced at $129.99, in reality she was paying $99.99 for a speaker that Kohl's regularly sold only at $99.99. Cortez alleges that the advertisements for the speaker violated § 124 because Kohl's did not sell it for the regular price in the 90 days immediately preceding her purchase. Cortez maintains that she would not have bought the speaker had she known it was not actually worth the $129.99 regular price.

Cortez sued Kohl's under the WUTPA on grounds that Kohl's price comparison advertising practices violated § 124. Cortez brought her suit on behalf of a proposed class of all persons in the United States who "purchased from the Kohl's website … one or more items advertised with a 'sale,' 'clearance,' or percentage off price compared to a higher 'Original' or 'Regular' price." Because Cortez asserted only state law claims and the parties lacked complete diversity, Cortez invoked CAFA as a basis for original subject matter jurisdiction. Under CAFA, district courts have jurisdiction over state law class actions if, among other requirements, the amount-in-

controversy for the entire class exceeds $5 million. 28 U.S.C. § 1332(d)(2).

After Cortez filed suit and the parties briefed a motion to dismiss for failure to state a claim, the district court sua sponte raised doubts about its CAFA jurisdiction. The district court questioned whether Cortez could plausibly allege that the amount-in-controversy exceeded $5 million. At the court's direction, Cortez supplemented her complaint with expanded jurisdictional allegations.

The district court dismissed the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The court held that to establish pecuniary loss under § 100.20 of the WUTPA, Cortez needed to plead that the product she received was worth less than what she paid or that she otherwise did not receive the benefit of her bargain. Because Cortez did not allege either, the court determined it was legally impossible for Cortez to meet the amount-in-controversy requirement. Cortez appeals.

II

Our review of the district court's dismissal of Cortez's complaint under Rule 12(b)(1) is de novo. *Choice v. Kohn Law Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023). We must accept all of Cortez's well-pleaded allegations as true and draw all reasonable inferences in her favor. *Id.*

Under CAFA, subject matter jurisdiction exists if (among other requirements) the aggregate amount-in-controversy is more than $5 million, excluding interest and costs. 28 U.S.C. § 1332(d); *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008). And when a plaintiff seeks damages that a statute does not permit, it's legally certain that the amount-in-controversy

cannot be met, which means dismissal for lack of subject matter jurisdiction is appropriate. See *Carroll v. Stryker Corp.*, 658 F.3d 675, 681 (7th Cir. 2011); *Sykes v. Cook Inc.*, 72 F.4th 195, 207 & 215–16 (7th Cir. 2023).

To decide if CAFA's amount-in-controversy requirement is met and we have jurisdiction, the dispositive question is whether Cortez's price comparison allegations, taken as true and construed in her favor, allege a pecuniary loss under the WUTPA. Because the WUTPA is a Wisconsin state statute, Wisconsin law governs our inquiry, and we must "use our own best judgment to estimate how the Wisconsin Supreme Court would rule" on the issue at hand. *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 706 (7th Cir. 2024) (citation modified). That's easier said than done, because no court has discussed pecuniary loss in the context of an alleged violation of § 124 or false price comparison advertising, and there's a split in the persuasive authority.

Start with the Wisconsin Supreme Court's recent decision in *Koble Invs. v. Marquardt*, 35 N.W.3d 488 (Wis. 2026), where the court found that a plaintiff had not proved any pecuniary loss. In that case, a landlord and tenant entered a lease that allegedly violated a Wisconsin statute and regulation. *Id.* at 498. Those laws said that any lease that allowed a landlord to terminate the tenancy for a crime in relation to the rental property must include an exception for domestic abuse. *Id.* The lease didn't include the exception, and the tenant sought to recover the rent she paid during her occupancy as a pecuniary loss under § 100.20(5). *Id.* at 499. The Wisconsin Supreme Court rejected that claim for per se damages:

> Logically, Marquardt could not reasonably argue the omission of the domestic abuse

> protections notice from the lease caused her to make rent payments. Marquardt enjoyed the benefit of the bargain she struck with Koble: She paid rent to Koble in exchange for Koble giving her exclusive occupancy of the premises. Neither [Marquardt's attorney] nor the court of appeals explained how Marquardt suffered any loss from paying rent in exchange for a place to live.

*Id.* There are two ways to understand the Wisconsin Supreme Court's reasoning. One might understand the court as analyzing two separate routes to showing a pecuniary loss—Marquardt could have shown a loss (1) if she was wrongfully induced to pay money or (2) if she did not receive the benefit of her bargain. Alternatively, though, the court may have meant that to show pecuniary loss a plaintiff must prove both (1) that her loss was caused by the violation and (2) that a pecuniary loss exists in the first place, by showing that she did not receive the benefit of her bargain. Note too that the *Koble* court said nothing about how a pecuniary loss should be calculated, if one were to be found.

Cortez effectively embraces the first interpretation we outline above—that a plaintiff isn't required to claim that she did not receive the benefit of her bargain to allege a pecuniary loss and can instead suffer a loss in the form of a purchase price for a product she was wrongfully induced to buy. There's authority—in the form of three Wisconsin appellate decisions—in support of that position. See *Benkoski v. Flood*, 626 N.W.2d 851, 859–61 (Wis. Ct. App. 2001); *Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 767 N.W.2d 394, 397–403 (Wis. Ct. App. 2009); *Pliss v. Peppertree Resort Villas, Inc.*, 663 N.W.2d 851,

858–59 (Wis. Ct. App. 2003); see also *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1020 (7th Cir. 2024) ("[W]e give great weight to the holdings of the state's intermediate appellate courts.") (citation modified). While none of these appellate decisions involved § 124 or false price comparison advertising, they show that in at least some circumstances, when money is wrongfully paid, a pecuniary loss exists in the form of the purchase price, sometimes subject to an offset for the fair market value the plaintiff received.

For instance, in *Benkoski*, the plaintiff sued a mobile home park owner under § 100.20 for refusing to approve the plaintiff's sale of a mobile home in violation of Wisconsin regulations. 626 N.W.2d at 854. Upon finding that the owner violated the regulations, the trial court awarded the plaintiff twice the purchase price of the mobile home pursuant to § 100.20's damages multiplier before subtracting the fair market value of the mobile home. *Id.* at 854, 859. On appeal, the owner argued that "the trial court should have subtracted the fair market value of the mobile home … prior to applying the damage multiplier," a "benefit of the bargain approach." *Id.* at 859 (citation modified). The appeals court disagreed. It held that a benefit of the bargain approach would render the plaintiff "remediless because he or she would still have his or her property—thus zeroing out the amount of pecuniary loss prior to applying the damage multiplier." *Id.* at 860. This result "[would] not promote the purposes and objectives that lie behind the legislature's creation of the damage multiplier provision." *Id.* The appeals court affirmed the trial court's award of double the mobile home's purchase price minus the mobile home's fair market value. *Id.* at 860–61.

The Wisconsin Court of Appeals reached similar conclusions in two other decisions. See *Pliss*, 663 N.W.2d at 858–59 (rejecting a benefit of the bargain measure for damages under § 100.20 and concluding that the proper measure of damages for a plaintiff wrongfully lured into purchasing a timeshare was "the money paid for the product that the consumer was improperly induced into buying"); *Kaskin*, 767 N.W.2d at 397–400 (holding that a plaintiff who sued a repair shop for performing unauthorized repairs was entitled to "the entire amount of the unauthorized charges that the customer paid to the motor vehicle repair shop"). While the plaintiffs in *Benkoski*, *Pliss*, and *Kaskin* arguably did not receive the benefit of their bargains, in each case the court held that damages were not limited to a benefit of the bargain measure, and that a plaintiff wrongfully induced to pay money suffers a pecuniary loss in the form of the purchase price, perhaps subject to an offset for the value received.

On the other side of the argument, there's authority in support of a benefit of the bargain requirement. In interpreting a similar statute (Wis. Stat. Ann. § 100.18, which also authorizes recovery for "pecuniary loss"), the Wisconsin Court of Appeals held that pecuniary loss could be either the purchase price of a product or benefit of the bargain damages, depending on the proof. *Mueller v. Harry Kauffmann Motorcars, Inc.*, 859 N.W.2d 451, 459 (Wis. Ct. App. 2014). And a federal district court concluded (in a case involving a sale to a consumer) that a plaintiff does not suffer a pecuniary loss if she receives the benefit of her bargain. See *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231–33 (1991) (federal district court decisions about the meaning of state law are persuasive authority); *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (same). In *Zapadinsky v. Blue*

*Diamond Growers*, No. 23-CV-231-JPS-JPS, 2023 WL 5116507 (E.D. Wis. Aug. 7, 2023), the plaintiff, like Cortez, asserted that he would not have bought a product absent an alleged misrepresentation by the seller. *Id.* at *5–6. The district court observed that not every violation of § 100.20 constitutes pecuniary loss and held that no such loss occurs when the plaintiff "has not alleged any detriment or loss of value beyond the bare allegation that he would not have purchased" a product. *Id.* at *8.

Our interpretation of an Illinois statute nearly identical to § 100.20 also supports a benefit of the bargain requirement. See 815 Ill. Comp. Stat. 505/10a; *Kim v. Carter's Inc.*, 598 F.3d 362, 365–67 (7th Cir. 2010) (concluding that a plaintiff had not alleged actual damages under Illinois's Consumer Fraud Act when the product purchased wasn't worth less than she paid); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739–40 (7th Cir. 2014) (same). In *Kim*, we considered alleged losses extending from comparative price deception. 598 F.3d at 365. We concluded—based on guidance from the Illinois state courts—that because the plaintiffs got the benefit of their bargain, they suffered "no actual pecuniary harm," and so could not establish statutory damages under Illinois law. *Id.* at 365–66.

Considering the available persuasive authority, we're left with a close call on an important question of Wisconsin law. The Wisconsin Supreme Court's ruling in *Koble* is ambiguous—it can be read to support either party's interpretation. And because *Pliss*, *Kaskin*, and *Benkoski* did not involve § 124 or price comparison advertising, those Wisconsin appellate decisions aren't decisive, either. Two federal district courts (*Zapadinsky* and the court below in this case) have reached

decisions favoring Kohl's position, which is also in line with our rulings about an analogous Illinois statute. Yet that authority doesn't end our inquiry, because when predicting "how the highest state court would decide a case … conservatism is in order in relying on the practice of other jurisdictions, even in analogous cases." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999). We are left with a split of authority as to whether a benefit of the bargain requirement exists for a claim like Cortez's, and with even less guidance as to how to calculate her loss if one exists. Is Cortez entitled to keep the speaker and receive a full refund? Or has she alleged a pecuniary loss of something less—perhaps just the refund, or the difference between the advertised regular price and the price Cortez paid? There is little authority on this point.

We may decide the content of state substantive law when sitting in diversity, but sometimes we certify a question to a state's highest court based on several factors. See *Johnson v. Amazon.com Servs. LLC*, 142 F.4th 932, 943 (7th Cir. 2025); *Village of Bedford Park v. Expedia, Inc.*, 876 F.3d 296, 302 (7th Cir. 2017). This is true even (as here) if the parties do not seek certification. See *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 & n.5 (7th Cir. 2001) (applying Circuit Rule 52). While certification is "a useful tool of cooperative federalism," it is also "costly and burdensome," and so we approach certification cautiously, and do not punt issues to a state supreme court when all that is required is "the exercise of a court's judgment." *Bedford Park*, 876 F.3d at 302 (citation modified).

Given the split of authority discussed above, we are genuinely uncertain as to whether Cortez (and the class she wants to represent) has alleged a pecuniary loss in this case, and if

so, how the court should calculate that loss. This uncertainty is the most important factor in deciding whether we should certify a question, rather than decide it. See *Johnson*, 142 F.4th at 943. The other factors favoring certification are also met. See *Bedford Park*, 876 F.3d at 302 (quotation omitted); *Finite Resources, Ltd v. DTE Methane Res., LLC*, 44 F.4th 680, 685 (7th Cir. 2022). The Wisconsin Supreme Court hasn't given a clear direction, and the case concerns a matter of vital public concern, because every Wisconsin retailer who uses price comparison advertising and every consumer who purchases the advertised products has a potential stake. Similarly, retail sales are common, and so the issue is likely to recur. And because the legal certainty doctrine controls this exercise of subject matter jurisdiction (if Cortez hasn't alleged a pecuniary loss, her suit cannot meet CAFA's amount-in-controversy requirement), the question presented is outcome determinative.

We respectfully request that the Wisconsin Supreme Court answer the following certified question:

> Under § 100.20(5) of the Wisconsin Unfair Trade Practices Act, what pecuniary loss, if any, does a plaintiff suffer when she purchases a product falsely advertised as on sale in violation of § 124 of the Wisconsin Department of Agriculture, Trade and Consumer Protection regulations?

The Wisconsin Supreme Court's inquiry should not be limited by our opinion, and we welcome the court's reframing this question to suit its review. The question is CERTIFIED, and all further proceedings are STAYED while the Wisconsin Supreme Court considers this matter.